# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| PETER F. PAUL, Reg. No. 78802-012, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | EP-10-CV-470-KC |
| | § | |
| M. TRAVIS BRAGG, Warden, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Peter F. Paul ("Paul"), a federal prisoner currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas, challenges the calculation of his release date by the Bureau of Prisons ("BOP").[1] In his *pro se* application for habeas corpus under 28 U.S.C. § 2241 [ECF No. 5], Paul maintains that the prosecutor in his criminal case agreed to grant him pre-sentence custody credit toward his one hundred twenty month sentence for the fifty-three months that he remained on bond, but subject to home detention with electronic monitoring, after he pleaded guilty to securities fraud. He alleges that Respondent M. Travis Bragg ("Bragg") and his staff have improperly refused to grant him this credit against his current sentence. In his motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 20], Bragg asserts that Paul is not entitled to credit for the time he spent while released on bail on home confinement, and that the Court should, therefore, dismiss his petition. After reviewing the record and for the reasons discussed below, the Court concludes that it should grant Bragg's motion, deny Paul's petition, and dismiss Paul's cause.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Paul and Stan Lee ("Lee") founded Stan Lee Media ("SLM"), an internet-based

---

[1] Anthony is located in El Paso County, Texas, which is within the territorial confines of the Western District of Texas. 28 U.S.C.A. § 124(d)(3) (West 2011).

multimedia production company, to produce and promote new comic book characters and stories developed by Lee. SLM had great potential; Lee had previously created characters such as Spiderman, the Incredible Hulk, and the X-Men while working at Marvel Comics.

As a co-founder and head of the company, Paul controlled a substantial amount of SLM stock. Paul placed portions of this stock in nominee accounts which he fully controlled, but maintained under other names to mask his involvement, at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Spear, Leeds & Kellogg, L.P. ("Spear, Leeds"). Between 1998 and 2000, Paul and others began artificially inflating the price of SLM stock by effecting trades between the nominee accounts, thereby making SLM stock appear to be a more liquid, and thus a less risky, investment. Additionally, Paul created a false appearance of higher than actual demand by directing others to execute trades immediately prior to the daily close of public trading. In order to profit from the inflated stock price without having to sell his stock, Paul drew on his fraudulently created nominee accounts to obtain margin loans from Merrill Lynch and Spear, Leeds totaling $12.6 million. Eventually, SLM's stock price declined and the scheme collapsed. As a result, the Securities and Exchange Commission opened an investigation into SLM stock trading.

When the stock fell to $0.13 per share in December 2000, Paul departed the United States and relocated to Brazil. The following year, a grand jury sitting in the Eastern District of New York returned a two-count indictment charging Paul with conspiracy to commit securities fraud and securities fraud.[2] Between August 2001 and July 2003, Brazilian authorities held Paul in prison while he awaited extradition to the United States. Upon his return to the United States,

---

[2] The indictment did not name Lee as a co-defendant.

Paul was arraigned and, on January 21, 2005, was released on bail, subject to home detention and electronic monitoring.

On March 7, 2005, Paul pleaded guilty, pursuant to a plea agreement, to count two of a two-count superseding indictment which charged him with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff. Paul remained in home detention with electronic monitoring until he appeared for sentencing more than four years later, on June 25, 2009. At the sentencing hearing, Paul's attorney asked the Court to sentence his client to time served.

> What that includes, your Honor, is 23 months in a Brazilian jail, 20 months in jail here in both the MDC and Nassau County. And for the last 53 months, being under strict house arrest. That is a total of 96 months. And my argument is, your Honor, it is a total of 96 months incarceration.[3]

When District Court Judge Leonard D. Wexler ("Judge Wexler") asked the Government for its position, Assistant United States Attorney Winston Chan ("AUSA Chan") explained "[t]he plea agreement precludes is [sic] from taking a specific position. And I do not disagree with anything Mr. Conway has said."[4] Ultimately, the Court sentenced Paul to one hundred twenty months' imprisonment, three years of supervised release, restitution of $11,479,035.32, and a $100 special assessment.[5] The Court specifically gave Paul "[c]redit for all of the time served in jail, *and no house arrest*."[6]

In response to Paul's subsequent motion to correct his sentence and obtain credit for time served while on pre-trial release subject to home detention and electronic monitoring, Chan

---

[3] Resp't's Mot. for Summ. J. Ex. A., Attach. 7 (Sentencing Tr.), 7:9–17.

[4] *Id.* at 12:10–12.

[5] J., ECF No. 261, *United States v. Paul*, 2:01-CR-00636-LDW-1 (E.D. N.Y. Jun. 25, 2009), *aff'd*, 634 F.3d 668 (2nd Cir. 2011).

[6] Resp't's Mot. for Summ. J. Ex. A., Attach. 7 (Sentencing Tr.), 17:13–14 (emphasis added).

stated "the defendant's sentencing transcript clearly demonstrates that the Court considered and declined to grant such additional credit. The judgment and conviction is thus correct, and the defendant's motion for correction should be denied."[7] The Court denied Paul's motion.[8]

In his instant petition, Paul raises four related grounds for relief. First, he asserts that Bragg has arbitrarily refused to perform a ministerial duty to include credit for all his pre-sentence home detention in calculating his release date. Second, he suggest that Bragg should not have relied on the sentencing court's denial of credit for the pre-sentence detention to the exclusion of the official sentencing transcript. Third, he alleges that his attorney entered into an agreement with the Government to receive credit for the time spent in home detention. Finally, he asserts that neither Bragg nor the Government have "refuted, rebutted, denied or challenged the agreement made by the Government to credit . . . 53 months of pre-sentence home confinement and three months of post sentence . . . home confinement towards the sentence imposed by the Court."[9]

## LEGAL STANDARD

A petitioner may attack the manner in which his sentence is being executed in the district court with jurisdiction over his custodian pursuant to 28 U.S.C. § 2241.[10] To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or

---

[7] Resp't's Mot. for Summ. J. Ex. A., Attach. 6 (Letter, Winston Chan, Assistant U.S. Attorney).

[8] *Id.* Ex. A, Attach. 5 (Mem. and Order, U.S. District Judge Leonard Wexler).

[9] Pet'r's Pet. 8.

[10] *Reyes-Requena v. United States*, 243 F.3d 893, 900–01 (5th Cir. 2001); *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir.2000); *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992).

treaties of the United States."[11]

"A motion to dismiss for failure to state a claim [pursuant to Federal Rule of Civil Procedure § 12(b)(6)] is an inappropriate practice in habeas."[12] A motion for summary judgment under Federal Rule of Civil Procedure 56, however, is appropriate in federal habeas corpus cases.[13] Accordingly, the Court will construe Bragg's pleading as a motion for summary judgment.

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.[14] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case."[15] The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[16] If the moving party meets this burden, the non-movant must show that specific facts exist over which there is a genuine issue for trial.[17] The non-movant cannot merely rest on the allegations of the pleadings,

---

[11] 28 U.S.C.A. § 2241(c) (West 2011).

[12] *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (per curiam) (unpublished) (citing *Browder v. Director, Dep't of Corr. of Ill.*, 434 U.S. 257, 269 n.14 (1978)).

[13] *Clark v. Johnson*, 202 F.3d 760, 764–65 (5th Cir. 2000) (citations omitted).

[14] FED. R. CIV. P. 56(a).

[15] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

[17] *Little*, 37 F.3d at 1075.

but must establish that there are material controverted facts in order to preclude summary judgment.[18] Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.[19]

**ANALYSIS**

*A.  Respondent did not arbitrarily refuse to perform a ministerial duty.*

Paul first alleges that Bragg and his staff arbitrarily refused to grant him credit against his sentence for the fifty-three months that he was released on bond, but subject to pre-sentence supervision which included home detention and electronic monitoring. He claims "[t]he Warden denied Petitioner's assertion of his granted right to home confinement credit on the basis of BOP policy that does not contemplate the Petitioner's being granted that credit by an agent of the Attorney General at sentencing."[20]

The Attorney General, through the BOP, has responsibility for imprisoning federal offenders.[21] If an inmate meets certain criteria, the BOP may grant him credit against a federal sentence for any qualifying period of pre-sentence custody. The relevant federal statute, 18 U.S.C. § 3585(b), states:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

---

[18] FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) (citation omitted).

[19] *Celotex*, 477 U.S. at 322–23; *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

[20] Pet'r's Pet. 5.

[21] 18 U.S.C.A. § 3621(a) (West 2011).

> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.[22]

Under the plain language of § 3585(b), the BOP may only grant credit for pre-sentence custody if the inmate is "in official detention" during the period for which the credit is sought.[23] According to the Supreme Court, "a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is 'released.'"[24] Moreover, giving up the opportunity to receive credit for a period of pre-trial confinement by "electing bail conditioned on home confinement . . . is too insubstantial to be regarded as a liberty interest protected by the Due Process Clause."[25] Thus, regardless of how restrictive the conditions applied to a defendant's pre-sentence release on bond, the BOP may properly deny credit for time spent while released on bond, as such time does not constitute time spent in "official detention" as that term is contemplated under § 3585(b).[26]

Moreover, "[b]ecause the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when

---

[22] 18 U.S.C.A. § 3585(b) (West 2011).

[23] *Id.*

[24] *Reno v. Koray*, 515 U.S. 50, 57 (1995).

[25] *Cucciniello v. Keller*, 137 F.3d 721, 724 (2d Cir. 1998).

[26] *Koray*, 515 U.S. at 56-61; *see also Rodriguez v. Lamer*, 60 F.3d 745, 747-48 (11th Cir. 1995) ("[T]he time Mr. Rodriguez spent under restrictive pre-trial release conditions does not constitute 'official detention' within the meaning of 18 U.S.C. § 3585(b) and he is not entitled to sentencing credit.").

imprisoning the defendant."[27] If a sentencing court cannot determine the amount of pre-sentence credit to grant a defendant, it stands to reason that, likewise, an AUSA has no authority to grant pre-sentence credit.

Here, the BOP correctly granted Paul pre-sentence credit from his date of arrest in Brazil, August 3, 2001, through the date he was released on bond, January 21, 2005. During the time for which Paul seeks pre-sentence custody credit, January 22, 2005, through September 29, 2009, he was released on bond and subject to home confinement and electronic monitoring. Paul was not in official detention. Thus, because granting Paul's request for pre-sentence custody credit for the time he was on bond is foreclosed by Supreme Court precedent, Bragg and his staff did not arbitrarily refuse to perform a ministerial duty when they did not include credit for his pre-sentence home detention when calculating his release date.

> B. *The sentencing transcript does not support Paul's claim that the BOP should give him credit for the fifty-three months he was released on bond and subject to supervision.*

Paul next argues that Bragg should not rely on the Court's judgment, which states that he should only receive credit "for time served in Jail,"[28] to the exclusion of the sentencing hearing transcript in computing his release date. Paul claims Bragg has thwarted his efforts to confirm the Government's "agreement" at the sentencing hearing, memorialized in the transcript, to grant him "all 96 months of pre-sentence incarceration as 'as time already served.'"[29]

The sentencing hearing transcript shows that Paul's attorney asked the Court to sentence

---

[27] *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also United States v. Caraveo-Nunez*, 992 F.2d 323, 1993 WL 152140, at *2 (5th Cir. April 21, 1993) (per curiam) (unpublished table opinion) ("But § 3585(b) does not authorize a district court to compute the credit at sentencing.").

[28] J., ECF No. 261, *United States v. Paul*, 2:01-CR-00636-LDW-1 (E.D. N.Y. Jun. 25, 2009).

[29] Pet'r's Pet. 6.

his client to time served, which he suggested should include the fifty-three months spend in home detention.[30] When Judge Wexler asked the Government for its position, AUSA Chan explained "[t]he plea agreement precludes is [sic] from taking a specific position."[31] The Court then specifically gave Paul "[c]redit for all of the time served in jail, and no house arrest."[32] Thus, the transcript does not support Paul's argument that, based on the Government's purported "agreement," Bragg should grant him all ninety-six months of pre-sentence incarceration and home detention as time already served.

> C. *The record does not support a conclusion that the prosecutor agreed to give Paul credit for fifty-three months of home detention.*

Paul alleges that his attorney entered into an agreement with the prosecutor for Paul to receive credit for the time spent in home detention.

> Petitioner's counsel entered into a post plea agreement "sentencing deal" with AUSA Chan to forebear from withdrawing Petitioner's plea and challenging the unjustified delay of 4½ years in sentencing Petitioner in consideration for the Government's agreement to credit ALL pre-sentence incarceration, including home arrest, as "time already served" towards the sentence to be imposed by the court. In addition the [G]overnment agreed not to oppose the Petitioner's request for a time served sentence based on the calculation of all pre-sentence incarceration including 43 months of jail credit and 53 months of home confinement totaling 96 months of incarceration.[33]

The record also belies this claim. Again, when Judge Wexler asked the Government for its position on a sentence, AUSA Chan explained "[t]he plea agreement precludes is [sic] from

---

[30] Resp't's Mot. for Summ. J. Ex. A., Attach. 7 (Sentencing Tr.), 7:9–17.

[31] *Id.* at 12:10–12.

[32] *Id.* at 17:13–14.

[33] Pet'r's Pet. 7.

-9-

taking a specific position."[34]  Moreover, AUSA Chan later opposed Paul's motion to correct his sentence and obtain credit for time served while on pre-trial release subject to home detention and electronic monitoring.  In a letter to the Court, Chan stated "the defendant's sentencing transcript clearly demonstrates that the Court considered and declined to grant such additional credit.  The judgment and conviction is thus correct, and the defendant's motion for correction should be denied."[35]  Furthermore, in an affidavit submitted to Court of Appeals for the Second Circuit after the sentencing hearing, Paul's attorney explained that AUSA "Chan agreed not to contest my request for a sentence of time served."[36]  It is clear that AUSA Chan never agreed that Paul should receive fifty-three months of pre-sentence custody credit for the time that he spent on bond subject to home detention and electronic monitoring.

> *D. Bragg has refuted Paul's claim that the Government agreed to credit his fifty-three months of home detention toward his sentence.*

In a habeas proceeding, the petitioner has the burden of proving that he is entitled to relief.[37]  The gravamen of Paul's petition is his claim that he entered into an agreement with AUSA Chan to receive credit toward his sentence for the fifty-three months that he remained on bond and subject to home detention after he pleaded guilty to securities fraud.  Contrary to Paul's assertion that Bragg has not refuted the claim, Bragg's pleadings and the record have clearly demonstrated that such an agreement did not exist.  Thus, Bragg has pointed out the absence of

---

[34] Resp't's Mot. for Summ. J. Ex. A., Attach. 7 (Sentencing Tr.), 12:10–12.

[35] *Id*. Ex. A., Attach. 6 (Letter, Winston Chan, Assistant U.S. Attorney).

[36] Affirmation of Joseph R. Conway, ECF No. 243-9, *United States v. Paul*, 2:01-CR-00636-LDW-1 (E.D. N.Y. Sept. 15, 2009).

[37] *Walker v. Maggio*, 738 F.2d 714, 716–17 (5th Cir. 1984); *Hayes v. Maggio*, 699 F.2d 198, 200 (5th Cir. 1983).

evidence to support one or more essential elements of Paul's claim. Paul has not shown that specific facts exist over which there is a genuine issue for trial. Accordingly, the Court finds that Bragg is entitled to summary judgment.

## CONCLUSION AND ORDERS

After carefully examining Paul's petition, Bragg's motion, and Paul's response, the Court concludes that Bragg has established that there is no genuine dispute about any material fact. Moreover, Paul has failed to establish that he is in custody in violation of the Constitution or laws or treaties of the United States. Absent such a showing, federal habeas corpus relief is not warranted. Therefore, the Court enters the following orders:

1. The Court **GRANTS** Respondent M. Travis Bragg's motion for summary judgment [ECF No. 20].

2. The Court **DENIES** Petitioner Peter Paul's *pro se* petition for habeas corpus under 28 U.S.C. § 2241 [ECF No. 5] and **DISMISSES** his cause **WITH PREJUDICE**.

3. The Court additionally **DENIES** all pending motions in this cause.

**SO ORDERED**.

**SIGNED** on this 1st **day of August 2011**.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE